E-FILED
Monday, 21 April, 2025 12:28:20 PM
Clerk, U.S. District Court, ILCD

**UNITED STATES DISTRICT COURT**
**CENTRAL DISTRICT OF ILLINOIS**
**URBANA DIVISION**

| | | |
|---|---|---|
| **ZIBO GONG,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| **v.** | ) | **Case No. 25-CV-2115** |
| | ) | |
| **KRISTI NOEM, U.S. Secretary of Homeland Security, and TODD LYONS, Acting Director of U.S. Immigration and Customs Enforcement,** | ) | |
| **Defendants.** | | |

## ORDER

This matter is currently before the court on Plaintiff Zibo Gong's Motion for Temporary Restraining Order and Preliminary Injunction (#2), which was filed on April 17, 2025. For the reasons set forth below, a Temporary Restraining Order ("TRO") is GRANTED.

## BACKGROUND

According to his Complaint (#1), Plaintiff is an international student enrolled in a master's degree program at the University of Illinois Urbana-Champaign. Defendants are Kristi Noem, the United States Secretary of Homeland Security, and Todd Lyons, the acting Director of United States Immigration and Customs Enforcement ("ICE").

By way of background, the Complaint explains that the Student and Exchange Visitor Information Systems ("SEVIS") is a centralized government database that tracks international students' compliance with their F-1 status. ICE, through the Student and Exchange Visitor Program, uses SEVIS to monitor student status and track their compliance with terms of their status. Only schools and ICE have access to SEVIS records. Students have no way to view or edit their own SEVIS record.

On April 4, 2025, Plaintiff was informed via email from the University that the U.S. Department of Homeland Security ("DHS") had "terminated [Plaintiff's] F-1 visa status." The email indicated that the "listed reason" for this action was "Otherwise Failing To Maintain Status: Individual identified in criminal records check and/or has had their VISA revoked." The email made clear that as a result of the termination Plaintiff no longer "hold[s] valid F-1 status within the United States." The email stated that Plaintiff was no longer authorized for employment and should make plans to exit the United States immediately. Plaintiff alleges that this email evidences the termination of his SEVIS record.

Plaintiff concedes that he was arrested in September 2024 but maintains that no criminal conviction resulted and that he has not committed any other violation or action that would provide a basis for termination of his SEVIS record. He asserts that the unlawful termination "has put his education and career trajectory at immediate risk." He cites the money he has already invested in his education, the tuition he has paid for the current semester, and rent that he will be liable for next year "despite being unable to remain in the country." "Most critically," Plaintiff continues, "this termination

prevents Plaintiff from completing his degree for which he has already invested substantial time and money." Finally, Plaintiff notes that "[t]his termination also creates a risk for Plaintiff in that ICE may use the termination of the SEVIS record as a basis to unlawfully detain and deport him—an outcome other students have already faced."

Plaintiff challenges the unlawful termination of his SEVIS record pursuant to the Administrative Procedure Act ("APA"), 5 U.S.C. § 706, the Fifth Amendment to the U.S. Constitution, and the Declaratory Judgment Act, 28 U.S.C. § 2201. He seeks, inter alia, a declaration that the termination of his SEVIS record was unlawful and injunctive relief enjoining Defendants' decision to terminate his SEVIS record and F-1 status and enjoining Defendants from "directly or indirectly enforcing, implementing, or otherwise taking any action or imposing any legal consequences—including causing Plaintiff's visa to be revoked or detaining or removing Plaintiff—as a result of that decision[.]"

**ANALYSIS**

To obtain a TRO, the moving party has the burden of showing that: "(1) they have a reasonable likelihood of success on the merits; (2) they have no adequate remedy at law; and (3) they will suffer irreparable harm without injunctive relief." *Stifel, Nicolaus & Co. v. Lac du Flambeau Band of Lake Superior Chippewa Indians*, 807 F.3d 184, 193 (7th Cir. 2015). If the moving party meets this threshold burden, then the court balances the harm to the movant absent a TRO against the harm to the opposing party if a TRO were granted, and considers the public interest in granting or denying a TRO. See *id*. "The more likely a plaintiff's success on the merits, the less the balance of harms needs to favor its side to justify relief, while a greater showing that the balance of harms

favors the plaintiff may offset a lower probability of success on the success." *Aon Risk Servs. Companies, Inc. v. Alliant Ins. Servs., Inc.*, 415 F. Supp. 3d 843, 847 (N.D. Ill. 2019) (citing *Abbott Labs. v. Mead Johnson & Co.*, 971 F.2d 6, 12 (7th Cir. 1992)). A TRO "is an extraordinary and drastic remedy, one that should not be granted unless the movant, by a clear showing, carries the burden of persuasion." *Goodman v. Ill. Dep't of Fin. & Prof'l Regulation*, 430 F.3d 432, 437 (7th Cir. 2005) (citing *Mazurek v. Armstrong*, 520 U.S. 968, 972 (1997)).

Plaintiff has attached to his Complaint copies of Orders issued by district courts across the country in recent weeks granting TROs for plaintiffs in cases essentially identical to this one: *Liu v. Noem*, No. 25-CV-133 (D.N.H. Apr. 10, 2025); *Roe and Doe v. Noem*, 2025 WL 1114694, at *4 (D. Mont. Apr. 15, 2025); *Wu v. Lyons*, No. 25-CV-1979 (E.D.N.Y. Apr. 11, 2025); *Zheng v. Lyons*, No. 25-CV-10893 (D. Mass. Apr. 11, 2025); *C.S. and D.T. v. Noem*, No. 25-CV-477 (W.D. Pa. Apr. 15, 2025). The court, in conducting its own research, has discovered a number of other cases reaching the same result as well. E.g., *Ratsantiboon v. Noem*, 2025 WL 1118645, at *3 (D. Minn. Apr. 15, 2025); *Patel v. Bondi*, 2025 WL 1134875, at *3 (W.D. Pa. Apr. 17, 2025); *Student Doe v. Noem*, 2025 WL 1134977 (E.D. Cal. Apr. 17, 2025); *Isserdasani and Khademi v. Noem*, 2025 WL 1118626, at *5 (W.D. Wis. Apr. 15, 2025); *Hinge v. Lyons*, 2025 WL 1134966, at *1 (D.D.C. Apr. 15, 2025); *Arizona Student Doe #2 v. Trump*, 2025 WL 1115468, at *2 (D. Ariz. Apr. 15, 2025). The court takes each of these cases into consideration. Further, the court notes that in this recent spate of cases, it has been unable to locate one in which a TRO was denied.

**Likelihood of Success on the Merits**

"A likelihood of success on the merits" requires that Plaintiff's chance of success must be more than negligible. See *Brunswick Corp. v. Jones*, 784 F.2d 271, 275 (7th Cir. 1986). Plaintiff asserts that he is likely to prevail on his APA, due process, and *Accardi*[1] claims.

"The APA sets forth the procedures by which federal agencies are accountable to the public and their actions subject to review by the courts." *Dep't of Homeland Sec. v. Regents of Univ. of Cal.*, 591 U.S. 1, 16 (2020) (cleaned up). Under § 706 of the APA, courts may set aside agency action that is "not in accordance with law; . . . in excess of statutory jurisdiction, authority, or limitations, or short of statutory right; . . . [or] without observance of procedure required by law." 5 U.S.C. § 706(2)(A), (C)-(D). Only "final agency actions are reviewable under the APA." 5 U.S.C. § 704.

The APA also "requires agencies to engage in reasoned decisionmaking, and directs that agency actions be set aside if they are arbitrary or capricious." *Regents*, 591 U.S. at 16 (cleaned up). The district court's role "is simply to ensure that the [agency] made no 'clear error of judgment' that would render its action 'arbitrary and capricious.'" *Lands Council v. McNair*, 537 F.3d 981, 993 (9th Cir. 2008) (citing *Marsh v. Or. Nat. Res. Council*, 490 U.S. 360, 378 (1989)). The requirement that agency action not be arbitrary and capricious requires the agency to "examine the relevant data and articulate a satisfactory explanation for its action" and explain its actions that will

[1] Under the *Accardi* Doctrine, Defendants are required to follow their own rules and procedures. *United States ex rel. Accardi v. Shaughnessy*, 347 U.S. 260 (1954).

enable the court to evaluate the agency's rationale at the time of decision. *Motor Vehicle Mfrs. Ass'n of the United States, Inc. v. State Farm*, 463 U.S. 29, 43 (1983); *Pension Benefit Guar. Corp. v. LTV Corp.*, 496 U.S. 633, 654 (1990).

As an initial matter, Plaintiff has provided the court with evidence that Defendants terminated his SEVIS record, effectively terminating plaintiff's F-1 status. This action constitutes a final decision reviewable under the APA. See *Jie Fang v. Dir. United States Immigr. & Customs Enf't*, 935 F.3d 172, 182 (3d Cir. 2019) ("The order terminating these students' F-1 visas marked the consummation of the agency's decisionmaking process, and is therefore a final order[.]").

DHS regulations provide a list of specific circumstances where certain conduct by a nonimmigrant constitutes a failure to maintain status, such as engaging in unauthorized employment, providing false information to DHS, or engaging in criminal activity. 8 C.F.R. § 214.1(e)-(g). For international students, these specified actions may result in SEVIS termination. Criminal activity is defined narrowly, and a failure to maintain status results only when a student is "convict[ed] . . . for a crime of violence for which a sentence of more than one year imprisonment may be imposed (regardless of whether such sentence is in fact imposed)[.]" 8 C.F.R. § 214.1(g).

Absent a failure to maintain status, for one of the enumerated reasons, ICE can only terminate SEVIS records under three circumstances: (1) a previously granted waiver under 8 U.S.C. § 1182(d)(3) or (4) is revoked; (2) a private bill to confer lawful permanent residence is introduced in Congress; or (3) DHS publishes a notification in the Federal Register identifying national security, diplomatic, or public safety reasons

for termination. 8 C.F.R. § 214.1(d). DHS cannot otherwise unilaterally terminate nonimmigrant status. *Fang*, 935 F.3d at 185 n.100.

None of these mechanisms have been deployed in this case. 8 C.F.R. § 214.1(d) does not provide statutory or regulatory authority to terminate F-1 student status in SEVIS based upon revocation of a visa. See *Fang*, 935 F.3d at 185 n.100. And while Plaintiff concedes he was arrested last year, he expressly denies that he engaged in criminal conduct as contemplated in DHS regulations.[2]

Therefore, the court finds that Plaintiff is reasonably likely to succeed on his claims that Defendants' termination of his F-1 student status under SEVIS is arbitrary and capricious, an abuse of discretion, contrary to constitutional right, contrary to law, and in excess of statutory jurisdiction. 5 U.S.C. § 706(2). Because the court finds Plaintiff likely to succeed on his APA claims, it need not address his other claims or theories at this time.

---

[2] "A condition of a nonimmigrant's admission and continued stay in the United States is obedience to all laws of United States jurisdictions which prohibit the commission of crimes of violence and for which a sentence of more than one year imprisonment may be imposed. A nonimmigrant's conviction in a jurisdiction in the United States for a crime of violence for which a sentence of more than one year imprisonment may be imposed (regardless of whether such sentence is in fact imposed) constitutes a failure to maintain status under section 241(a)(1)(C)(i) of the Act." 8 C.F.R. § 214.1.

**Inadequate Remedy at Law and Irreparable Harm**

The Seventh Circuit has frequently considered these two factors as part of a single required element for preliminary injunctive relief. E.g., *Abbott* Lab'ys, 971 F.2d at 11.

Irreparable harm is "harm that cannot be repaired and for which money compensation is inadequate." *Orr v. Shicker*, 953 F.3d 490, 502 (7th Cir. 2020) (quoting *Graham v. Med. Mut. of Ohio*, 130 F.3d 293, 296 (7th Cir. 1997)) (quotations omitted). To cause irreparable harm, an injury "must be of a particular nature, so that compensation in money cannot atone for it." *Graham*, 130 F.3d at 296. Similarly, "[i]nadequate remedy at law does not mean wholly ineffectual; rather, the remedy must be seriously deficient as compared to the harm suffered." *Foodcomm Int'l v. Barry*, 328 F.3d 300, 304 (7th Cir. 2003) (citing *Roland Mach. Co. v. Dresser Indus.*, 749 F.2d 380, 386 (7th Cir. 1984)).

The harm that Plaintiff would suffer in the absence of a TRO is obvious, and it would be irreparable. Losing F-1 status places Plaintiff's education, research, financial stability, and career trajectory at imminent risk of irreparable harm. Worse yet, in the absence of a TRO, Plaintiff is facing a constant and pervasive threat of immediate detention or removal from the United States. These current and threatened consequences constitute a risk of irreparable harm for which an award of monetary damages would not be sufficient. Accordingly, the court finds these factors satisfied.

**Balance of Harms and Public Interest**

Having found that Plaintiff has made the threshold showing required for issuance of a TRO, the court must consider the harms that Defendants would suffer in the event of injunctive relief, and balance those against the clearly irreparable harms to Plaintiff discussed above.

Any potential harm suffered by Defendants as a result of a TRO would be minimal at most. See *Roe*, 2025 WL 1114694, at *4 ("[I]t is unlikely any harm will come to Defendants as a result of this temporary restraining order."). In *Liu*, No. 25-CV-133, Doc. No. 13 at 4, the court found that any potential interference with "ICE's ability to carry out its duties" was insufficient within the balance of harms analysis. Indeed, an agency's obligation to comply with constitutional, statutory, and regulatory requirements should not be considered a hardship. As a result of the apparent lack of harm Defendants will suffer, the court also exercises its discretion to waive the bond requirement under Federal Rule of Civil Procedure Rule 65(c). See *Roe*, 2025 WL 1114694, at *4.

The public interest also favors a TRO. The relief requested restores Plaintiff's ability to remain in the United States to complete his degree, and granting temporary relief in this instance will maintain the status quo. As one court has observed, "the public interest is served by granting the temporary restraining order because it avoids undermining the missions of U.S. universities, preserves the substantial benefits of international research and collaboration, and prevents potential chilling of international student enrollment." *Student Doe*, 2025 WL 1134977, at *8.

In other contexts, the Seventh Circuit has allowed that there is a "clear public interest (as expressed by Congress) in deporting illegal aliens without delay." *Lucacela v. Reno*, 161 F.3d 1055, 1059 (7th Cir. 1998). But Plaintiff is not an illegal alien. He resided, worked, and attended school in this country pursuant to his valid F-1 status, until one day, for reasons unknown to him, his status was terminated. "The public interest would be served by the entry of a temporary restraining order, as it is 'always in the public interest to prevent the violation of a party's constitutional rights.'" *Faust v. Vilsack*, 519 F. Supp. 3d 470, 477 (E.D. Wis. 2021) (quoting *Déjà vu of Nashville, Inc. v. Metro. Gov't of Nashville & Davidson Cty., Tennessee*, 274 F.3d 377, 400 (6th Cir. 2001)). More broadly still, it is assuredly in the public's interest that their government agencies be held to the rule of law.

In summary, Plaintiff has demonstrated a likelihood of success on the merits, that he lacks an adequate remedy at law, and that he would suffer irreparable harm but for the issuance of a TRO. Further, the issuance of a TRO is supported by a balance of Plaintiff's hardships against those of Defendants and is in the public interest. Accordingly, Plaintiff's request for a TRO is GRANTED.

IT IS THEREFORE ORDERED THAT:

(1) Plaintiff's request for a temporary restraining order is GRANTED. Defendants Kristi Noem and Todd Lyons are hereby enjoined for a period of 14 days as follows:

(a) Defendants shall restore Plaintiff's F-1 student status in the Student and Exchange Visitor Information System.

(b) Defendants shall not terminate Plaintiff's student status under the Student and Exchange Visitor Information System absent (i) a valid

ground as set forth in 8 C.F.R. § 214.1(d), and (ii) an adequate individualized pre-deprivation proceeding before an impartial adjudicator.

(c) Defendants are prohibited from arresting, detaining, or transferring Plaintiff out of this court's jurisdiction, or ordering the arrest, detention, or transfer of Plaintiff out of this court's jurisdiction, without first providing adequate notice to both this court and Plaintiff's counsel as well as appropriate time to contest any such action.

(d) Defendants are prohibited from initiating removal proceedings against or deporting Plaintiff on the basis of the termination of his F-1 student status.

(2) It is further ordered that Defendant shall file their response to Plaintiff's Motion for Preliminary Injunction (#2) by April 25, 2025. Plaintiff shall file any reply thereto by April 30, 2025.

(3) A hearing on Plaintiff's Motion is hereby set for May 1, 2025, at 10:30 AM in Courtroom A in Urbana. The parties shall file respective notices by 5:00 p.m. on April 29, 2025, of any witnesses they intend to call at the hearing along with a brief summary of their expected testimony and the expected length of their testimony.

ENTERED this 21st day of April, 2025, at 12:30 PM

s/Colin Stirling Bruce

COLIN S. BRUCE

U.S. DISTRICT JUDGE