## UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF ILLINOIS
## URBANA DIVISION

| | | |
|---|---|---|
| **ZIBO GONG,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| **v.** | ) | **Case No. 25-CV-2115** |
| | ) | |
| **KRISTI NOEM, Secretary of Homeland** | ) | |
| **Security, and TODD LYONS, Acting** | ) | |
| **Director of U.S. Immigration and** | ) | |
| **Customs Enforcement,** | ) | |
| | ) | |
| **Defendants.** | ) | |

## <u>ORDER</u>

On April 17, 2025, Plaintiff, Zibo Gong, filed a Petition for Declaratory Judgment and Injunctive Relief (#1). Plaintiff alleges therein that Defendants—U.S. Secretary of Homeland Security Kristi Noem and Acting Director of U.S. Immigration and Customs Enforcement ("ICE") Todd Lyons—unlawfully terminated his SEVIS[1] record, which is tantamount to the termination of his F-1 visa status.

Plaintiff contemporaneously filed a Motion for Temporary Restraining Order and Preliminary Injunction (#2), asserting, inter alia, that he would suffer irreparable harm—ranging from interruption of his course of study to potential deportation without notice—if injunctive relief was not granted.

---

[1] The Student and Exchange Visitor Information System.

On April 21, 2025, the court entered an Order (#6) issuing a Temporary Restraining Order ("TRO"), ordering, among other things, that Defendants restore Plaintiff's F-1 status in SEVIS.

Defendants filed their Response (#8) to Plaintiff's Motion on April 25, 2025. Plaintiff filed a Reply (#12) on April 30, 2025. A hearing on the matter was held on May 1, 2025. For the reasons set forth below, Plaintiff's Motion for a Preliminary Injunction (#2) is GRANTED.

## BACKGROUND

According to his Complaint (#1), Plaintiff is an international student enrolled in a master's degree program at the University of Illinois Urbana-Champaign. On April 4, 2025, Plaintiff was informed via email from the University that the U.S. Department of Homeland Security ("DHS") had "terminated [Plaintiff's] F-1 visa status." The email indicated that the "listed reason" for this action was "Otherwise Failing To Maintain Status: Individual identified in criminal records check and/or has had their VISA revoked." The email made clear that as a result of the termination Plaintiff no longer "hold[s] valid F-1 status within the United States." The email stated that Plaintiff was no longer authorized for employment and should make plans to exit the United States immediately.

Plaintiff asserts in his Complaint and in the Memorandum (#3) in support of his Motion that "the University informed Plaintiff via email that his SEVIS record was terminated by [DHS]." However, the email from the University, which Plaintiff attaches

as Exhibit A to his Complaint, makes no actual mention of a SEVIS record. Rather, it only states that Plaintiff's F-1 visa status was terminated. Nevertheless, Defendants concede that Plaintiff's SEVIS record was, in fact, terminated.

Plaintiff admits that he was arrested in September 2024 but maintains that no criminal conviction resulted and that he has not committed any other violation or action that would provide a basis for termination of his SEVIS record. He asserts that the unlawful termination "has put his education and career trajectory at immediate risk." He cites the money he has already invested in his education, the tuition he has paid for the current semester, and rent that he will be liable for next year "despite being unable to remain in the country." "Most critically," Plaintiff continues, "this termination prevents Plaintiff from completing his degree for which he has already invested substantial time and money." Finally, Plaintiff notes that "[t]his termination also creates a risk for Plaintiff in that ICE may use the termination of the SEVIS record as a basis to unlawfully detain and deport him—an outcome other students have already faced."

Plaintiff challenges the unlawful termination of his SEVIS record pursuant to the Administrative Procedure Act ("APA"), 5 U.S.C. § 706, the Fifth Amendment to the U.S. Constitution, and the Declaratory Judgment Act, 28 U.S.C. § 2201. He seeks, inter alia, a declaration that the termination of his SEVIS record was unlawful and injunctive relief enjoining Defendants' decision to terminate his SEVIS record and F-1 status and enjoining Defendants from "directly or indirectly enforcing, implementing, or otherwise taking any action or imposing any legal consequences—including causing Plaintiff's visa to be revoked or detaining or removing Plaintiff—as a result of that decision[.]"

The court entered a 14-day TRO on April 21, 2025. Therein, the court ordered the following:

(a) Defendants shall restore Plaintiff's F-1 student status in the Student and Exchange Visitor Information System.

(b) Defendants shall not terminate Plaintiff's student status under the Student and Exchange Visitor Information System absent (i) a valid ground as set forth in 8 C.F.R. § 214.1(d), and (ii) an adequate individualized pre-deprivation proceeding before an impartial adjudicator.

(c) Defendants are prohibited from arresting, detaining, or transferring Plaintiff out of this court's jurisdiction, or ordering the arrest, detention, or transfer of Plaintiff out of this court's jurisdiction, without first providing adequate notice to both this court and Plaintiff's counsel as well as appropriate time to contest any such action.

(d) Defendants are prohibited from initiating removal proceedings against or deporting Plaintiff on the basis of the termination of his F-1 student status.

Defendants state that, at some point following the issuance of the TRO, they "reinstated" Plaintiff's SEVIS record. Though Defendants themselves produced no evidence of that action, Plaintiff has provided a copy of his SEVIS record showing that he was restored to active status on April 23, 2025.

The reinstatement or reactivation of Plaintiff's SEVIS record has, understandably, shifted the parties' arguments. Defendants argue that because reinstatement of his SEVIS record (and his F-1 status) was the only relief ever requested by Plaintiff, reinstatement now renders the matter moot.[2] They also argue, more broadly, that "SEVIS does not control or even necessarily reflect whether a student has lawful

---

[2] Defendants state in their Response both that "Plaintiff's request for an injunction is moot" and that Plaintiff's "claims are moot." As will be discussed below, the result is the same no matter Defendants' precise argument.

nonimmigrant status[.]" Thus, they maintain that the termination of Plaintiff's SEVIS record has no impact on his F-1 status and, and therefore Plaintiff has suffered no harm, or risk of future harm, as a result of Defendants' conduct.[3]

Plaintiff identifies two related issues that not only create a live controversy, but require preliminary injunctive relief. First, he argues that Defendants are unable to show that the termination of his SEVIS record cannot be reasonably expected to recur. In other words, he suggests that Defendants may simply re-terminate his SEVIS record upon expiration of the TRO. Second, Plaintiff argues that even with the reinstatement of Plaintiff's SEVIS record, Defendants' conduct has resulted in a "gap" in that record. He maintains that a gap in his SEVIS record puts him at risk of a number of potential consequences, including many of the same consequences he would face if his SEVIS record and F-1 status were still terminated.[4]

---

[3] Defendants also raise a number of arguments concerning the appropriateness of preliminary injunctive relief, which the court will set out elsewhere in this Order.

[4] Defendants suggested at the hearing on Plaintiff's Motion that Plaintiff made no mention of a "gap" issue in his Complaint or Motion, and raises it only in his Reply. To the extent that Defendants are suggesting some sort of waiver, that argument is rejected. Plaintiff could not have mentioned a gap in his SEVIS record in his Complaint, because there was no gap until Defendants reinstated his SEVIS record.

Defendants attached to their Response the declaration of Andre Watson, Senior Official within the National Security Division for Homeland Security Investigations.[5] Watson states therein that "[t]erminating a record in SEVIS does not terminate an individual's nonimmigrant status in the United States" and that "[t]erminating a record within SEVIS does not effectuate a visa revocation."

Plaintiff has attached to his Reply the declaration of Nusha Shishegar. Shishegar has more than 30 years' experience as a primary designated school official or a designated school official ("DSO"), roles in which she used SEVIS to monitor F-1 students and ensure compliance with the numerous student reporting requirements. She explains that where a student fails to comply with the terms of their F-1 status, a DSO is required to terminate that student's SEVIS record.

The remainder of Shishegar's declaration details the consequences of the termination of a SEVIS record. She states that "[t]ermination of a student's SEVIS record ends all of the benefits of F-1/M-1 status, including but not limited to all on- and/or off-campus employment authorization such as [curricular practical training] and [optional practical training]." Customs and Border Patrol ("CBP") "will not admit an F-1/M-1 student into the United States on a terminated SEVIS record." Further, United States

---

[5] Watson's declaration was originally entered in a different federal case; in fact, it retains the caption for that case. Thus, while Watson states in his declaration that he is "aware of the above-captioned lawsuit and the motion for temporary restraining order (TRO) filed by the Plaintiff [sic] in this matter[,]" that is a reference to the other case, not this one. He goes on to address the circumstances of the termination of SEVIS records of the seven plaintiffs in that case.

Citizenship and Immigration Services ("USCIS") "will consider a terminated record as a lack of status or failure to maintain status for the student, which renders the student out of status."

At bottom, Shishegar states that DHS, ICE, and CBP "have always considered a SEVIS termination as termination of F1/M-1 lawful status in the United States." To wit, Shishegar read and considered Watson's statement that termination of a record in SEVIS does not terminate an individual's nonimmigrant status. She responds: "In my experience, ICE has always taken the opposite position that terminating a record in SEVIS does result in the termination of an F-1/M-1 student's nonimmigrant status in the United States. The position of Mr. Watson is different than the public position of ICE and all previous statements and guidance I received during my career."

Plaintiff has also attached to his Reply a document circulated by Defendants and reflecting new SEVIS guidance. Per Plaintiff, the guidance first came to light when it was provided to the court by the Department of Justice in the case of *Patel v. Lyons*, No. 25-cv-01096 (D.D.C.), during a preliminary injunction hearing held on April 29, 2025. Defendants in this case raise no objection to Plaintiff's characterization of that document.

The guidance, dated April 26, 2025, states, inter alia:

When SEVP has objective evidence that a nonimmigrant visa holder is no longer complying with the terms of their nonimmigrant status for any reason, then the SEVIS record may be terminated on that basis. Information should be entered into in [sic] SEVIS that identifies the failure to comply. In its discretion, ICE may conduct further investigation or initiate removal proceedings pursuant to INA § 237(a)(1)(C)(i) based on evidence that a nonimmigrant student is not complying with the terms of their nonimmigrant status.

The guidance also includes a reminder that the Department of State may revoke an alien's visa at any time at the Secretary's discretion, and that such a revocation will be the basis for termination of the SEVIS record as well as a basis for removability.

Attorney Stephen Navarre testified at the hearing in this case. Navarre was originally disclosed by Plaintiff as an immigration law expert. Defendants objected to Navarre's testimony, arguing that expert legal testimony, as it were, was not appropriate. The court agreed with Defendants on that point, but allowed Navarre to testify as a fact witness, further noting that, to the extent Navarre put forth any legal theory, he was essentially acting as co-counsel for Plaintiff.

Navarre opined that the gap in Plaintiff's record was likely to cause issues similar to those he faced while in terminated status. For instance, Plaintiff and others in his position may face denials of certain future applications based on there being a gap in his legal status in his SEVIS record. Navarre also testified that he would advise those in Plaintiff's position to not travel outside of the country unless they did not plan to return, due to the likelihood that reentry would be denied based on the SEVIS record gap.

## ANALYSIS

The standards for obtaining a preliminary injunction are the same as those for obtaining a TRO. *Cassell v. Snyders*, 458 F. Supp. 3d 981, 990 (N.D. Ill. 2020), aff'd, 990 F.3d 539 (7th Cir. 2021). Thus, to obtain a preliminary injunction, Plaintiff must once again demonstrate that (1) he has some likelihood of prevailing on the merits of his

claims; (2) without the requested injunctive relief he will suffer irreparable harm; and (3) traditional legal remedies would be inadequate. *Mays v. Dart*, 974 F.3d 810, 818 (7th Cir. 2020).

Where the movant satisfies those elements, the court proceeds to a balancing analysis, wherein it "must weigh the harm the denial of the preliminary injunction would cause the plaintiff against the harm to the defendant if the court were to grant it." *Id*. "This balancing process involves a 'sliding scale' approach: the more likely the plaintiff is to win on the merits, the less the balance of harms needs to weigh in his favor, and vice versa." *Id*. "This weighing process . . . also takes into consideration the consequences to the public interest of granting or denying preliminary relief." *Abbott Lab'ys v. Mead Johnson & Co.*, 971 F.2d 6, 12 (7th Cir. 1992)

<u>Mootness and the Scope of Injunctive Relief</u>

Defendants argue as an initial matter that the restoration of Plaintiff's SEVIS record renders the instant dispute moot. The court rejects that argument for two reasons.

First, a defendant may not "'automatically moot a case'" by the simple expedient of suspending its challenged conduct after it is sued." *Fed. Bureau of Investigation v. Fikre*, 601 U.S. 234, 241 (2024) (quoting *Already, LLC v. Nike, Inc.*, 568 U.S. 85, 91 (2013)). Instead, Supreme Court precedent dictates that a defendant's "voluntary cessation of a challenged practice will moot a case only if the defendant can show that the practice cannot reasonably be expected to recur." *Id*. (cleaned up). "[A] defendant claiming that

its voluntary compliance moots a case bears a formidable burden." *Friends of the Earth,*

*Inc. v. Laidlaw Env't Servs. (TOC), Inc.*, 528 U.S. 167, 170 (2000). As the Court has

explained:

> Were the rule more forgiving, a defendant might suspend its challenged conduct
> after being sued, win dismissal, and later pick up where it left off; it might even
> repeat this cycle as necessary until it achieves all of its allegedly unlawful ends.
> A live case or controversy cannot be so easily disguised, and a federal court's
> constitutional authority cannot be so readily manipulated. To show that a case is
> truly moot, a defendant must prove no reasonable expectation remains that it
> will return to its old ways. That much holds for governmental defendants no less
> than for private ones.

*Fikre*, 601 U.S. at 241.

Defendants in this case have failed to meet that "formidable burden."

Defendants have restored Plaintiff's SEVIS record—if not because of, then at least after

this court ordered them to do so. But Defendants have not stated, in their Response or

at the hearing, why the SEVIS record was terminated in the first place. They have not

stated whether it was a mistake or intentional. They have not even asserted that

termination will not happen again in these same circumstances, let alone produce any

evidence that might support such an assertion. In simple terms, Defendants appear to

have no interest in showing that their conduct will not recur.

Second, Plaintiff's request that the court "[e]njoin Defendants' decision to

terminate Plaintiff's SEVIS record and F-1 status" is but one aspect of his application for

injunctive relief. He has also requested that the court "[e]njoin Defendants from directly

or indirectly enforcing, implementing, or otherwise taking any action or imposing any legal consequences—including causing Plaintiff's visa to be revoked or detaining or removing Plaintiff—*as a result of that decision*." (Emphasis added).

The thrust of Plaintiff's argument in his Reply and at the hearing is that, Defendant's reinstatement of his SEVIS status notwithstanding, he is still at risk of suffering legal consequences as a result of the original decision to terminate his status, because the resulting gap in his SEVIS status will itself create a number of consequences. To be sure, Defendants have argued that termination of the SEVIS record does not actually impact F-1 status, and would presumably argue that a gap in a SEVIS record likewise does not carry a threat of legal consequences. But this is very much a live dispute, such that this matter cannot be deemed moot.

<u>Legal Backdrop</u>

The Immigration and Nationality Act ("INA") allows for the entry of a foreign national who "is a bona fide student qualified to pursue a full course of study and who seeks to enter the United States temporarily and solely for the purpose of pursuing such a course of study . . . at an established college, university, seminary, conservatory, academic high school, elementary school, or other academic institution or in an accredited language training program in the United States." 8 U.S.C. § 1101(a)(15)(F)(i). Congress has further required that the Secretary of Homeland Security shall "develop and conduct a program to collect from approved institutions of higher education, other approved educational institutions, and designated exchange visitor programs in the United States [certain information] with respect to aliens who have the status, or are

11

applying for the status, of nonimmigrants under subparagraph (F), (J), or (M) of section 1101(a)(15) of this title." 8 U.S.C. § 1372(a)(1). Accordingly, the Secretary of Homeland Security created SEVIS, "a web-based system that [DHS] uses to maintain information on Student and Exchange Visitor Program-certified schools, F-1 and M-1 students who come to the United States to attend those schools, U.S. Department of State-designated Exchange Visitor Program sponsors and J-1 visa Exchange Visitor Program participants." ICE, *Student and Exchange Visitor Information System*, https://www.ice.gov/sevis/overview (last visited May 6, 2025).

The many requirements for maintaining legal F-1 status are set out at 8 C.F.R. § 214.2(f). Additional bases for loss of status can be found at 8 C.F.R. § 214.1(e)-(g). Notably among these, "[a] nonimmigrant's conviction in a jurisdiction in the United States for a crime of violence for which a sentence of more than one year imprisonment may be imposed (regardless of whether such sentence is in fact imposed) constitutes a failure to maintain status[.]" 8 C.F.R. § 214.1(g).

An F-1 student who fails to maintain status must leave immediately or seek reinstatement and is not given a grace period to prepare for departure. See 8 C.F.R. § 214.2(f)(5)(iv) ("An F-1 student who has completed a course of study and any authorized practical training following completion of studies will be allowed an additional 60-day period to prepare for departure from the United States or to transfer in accordance with paragraph (f)(8) of this section . . . . However, an F-1 student who fails to maintain a full course of study without the approval of the DSO or otherwise fails to maintain status is not eligible for an additional period for departure."); see also 8

U.S.C. § 1184(a)(1) (directing that the Attorney General "insure that . . . upon failure to maintain the status under which he was admitted . . . such alien will depart from the United States").

While a student may seek reinstatement of his status in SEVIS, a student is not required to do so. Under the reinstatement guidelines, USCIS may consider reinstating, but is not required to reinstate, a student who demonstrates among other things that he "has not been out of [valid F-1] status for more than 5 months at the time of filing the request for reinstatement" or that "the failure to file within the 5 month period was the result of exceptional circumstances and that the student filed the request for reinstatement as promptly as possible under these exceptional circumstances." 8 C.F.R. § 214.2(f)(16)(i)(A). If USCIS does not reinstate the student's status, the student may not appeal that decision. 8 C.F.R § 214.2(f)(16)(ii).

Absent a failure to maintain status, for one of the enumerated reasons, ICE can only terminate SEVIS records under three circumstances: (1) a previously granted waiver under 8 U.S.C. § 1182(d)(3) or (4) is revoked; (2) a private bill to confer lawful permanent residence is introduced in Congress; or (3) DHS publishes a notification in the Federal Register identifying national security, diplomatic, or public safety reasons for termination. 8 C.F.R. § 214.1(d). DHS cannot otherwise unilaterally terminate nonimmigrant status.

<u>Likelihood of Success on the Merits</u>

"A likelihood of success on the merits" requires that Plaintiff's chance of success must be more than negligible. See *Brunswick Corp. v. Jones*, 784 F.2d 271, 275 (7th Cir. 1986). While Plaintiff insists he will prevail on all of his claims, the court, in its Order entering the TRO, only discussed Plaintiff's APA claim.

"The APA sets forth the procedures by which federal agencies are accountable to the public and their actions subject to review by the courts." *Dep't of Homeland Sec. v. Regents of Univ. of Cal.*, 591 U.S. 1, 16 (2020) (cleaned up). Under § 706 of the APA, courts may set aside agency action that is "not in accordance with law; . . . in excess of statutory jurisdiction, authority, or limitations, or short of statutory right; . . . [or] without observance of procedure required by law." 5 U.S.C. § 706(2)(A), (C)-(D). Only "final agency actions are reviewable under the APA." 5 U.S.C. § 704.

The APA also "requires agencies to engage in reasoned decisionmaking, and directs that agency actions be set aside if they are arbitrary or capricious." *Regents*, 591 U.S. at 16 (cleaned up). The district court's role "is simply to ensure that the [agency] made no 'clear error of judgment' that would render its action 'arbitrary and capricious.'" *Lands Council v. McNair*, 537 F.3d 981, 993 (9th Cir. 2008) (citing *Marsh v. Or. Nat. Res. Council*, 490 U.S. 360, 378 (1989)). The requirement that agency action not be arbitrary and capricious requires the agency to "examine the relevant data and articulate a satisfactory explanation for its action" and explain its actions that will

14

enable the court to evaluate the agency's rationale at the time of decision. *Motor Vehicle Mfrs. Ass'n of the United States, Inc. v. State Farm*, 463 U.S. 29, 43 (1983); *Pension Benefit Guar. Corp. v. LTV Corp.*, 496 U.S. 633, 654 (1990).

Defendants put forth four arguments as to why Plaintiff is unlikely to prevail on his APA claims: (1) The Privacy Act (5 U.S.C. § 552a) controls Plaintiff's claim, not the APA, and the Privacy Act precludes review for a number of reasons; (2) the termination of Plaintiff's SEVIS record is not a "final agency action," as required to be reviewable under the APA; (3) Defendant's conduct in terminating Plaintiff's SEVIS record was not arbitrary and capricious; and (4) this court cannot enjoin a removal proceeding via an APA challenge.

### APA vs. the Privacy Act

The APA waives sovereign immunity for actions in federal district court by "person[s] suffering legal wrong because of agency action." 5 U.S.C. § 702. But the "waiver does not apply 'if any other statute that grants consent to suit expressly or impliedly forbids the relief which is sought' by the plaintiff." *Match-E-Be-Nash-She-Wish Band of Pottawatomi Indians v. Patchak*, 567 U.S. 209, 215 (2012) (quoting 5 U.S.C. § 702).

Defendants argue that "the Privacy Act displaces Plaintiff's APA claims, as it is directly on point and allows only individuals to challenge data contained in a government system of records in federal court and establishes a comprehensive scheme for such claims." See 5 U.S.C. § 552a(g)(1). They point out that the Privacy Act specifically prohibits someone in Plaintiff's position from filing suit challenging records.

15

5 U.S.C. § 552a(a)(2) (defining "individual" as "a citizen of the United States or an alien lawfully admitted for permanent residence"). "As such," Defendants argue, "the United States has not waived its sovereign immunity here regarding SEVIS."[6]

As the District Court for the District of New Hampshire recently concluded: "The court need not address the defendants' arguments in depth because . . . they are based on a flawed premise. [Plaintiff] is not seeking to correct a factual error in his SEVIS record such that his claim could potentially implicate the Privacy Act." *Liu v. Noem*, 2025 WL 1233892, at *8 (D.N.H. Apr. 29, 2025) (citing *Dep't of Agric. Rural Dev. Rural Hous. Serv. v. Kirtz*, 601 U.S. 42, 63 (2024) (observing that the Privacy Act was "passed to protect the privacy of individuals identified in federal information systems" and "addresses the government's retention and disclosure of personal information" while allowing individuals to seek a court order requiring it to change "inaccurate information" and "correct its records")). As in *Liu*—and the myriad other identical cases arising across the country in the past month[7]—Plaintiff's APA claims are based on the allegation that his SEVIS record accurately reflects that DHS unlawfully terminated his F-1 student status. In other words, it is DHS's termination of his F-1 student status, as that action is manifested in the SEVIS database, that Plaintiff challenges here.

---

[6] Separately, Defendants argue that once Plaintiff's APA claims are construed as Privacy Act claims, this court would lack jurisdiction because the Privacy Act requires the exhaustion of administrative remedies.

[7] The court listed many of these cases in its previous Order at page 4.

Simply put, the Privacy Act is irrelevant to Plaintiff's claims. That Act "allows for amendment of factual or historical errors. It is not, however, a vehicle for amending the *judgments* of federal officials or others as those judgments are reflected in records maintained by federal agencies." *Kleiman v. Dep't of Energy*, 956 F.2d 335, 337-38 (D.C. Cir. 1992) (cleaned up) (emphasis in original); see also *Almahdi v. Lyons*, 2006 WL 751331, at *3 (D.D.C. Mar. 21, 2006) ("Fundamentally, the Privacy Act is not the way to challenge the ultimate agency determination."). And to the extent that Defendants argue the termination of Plaintiff's SEVIS record is a mere recordkeeping abnormality, bearing no actual relation to Plaintiff's F-1 status, that argument must be rejected. The unsupported statement from Watson to that effect is insufficient evidence in light of the statement from Shishegar, the conduct of the University in this case informing Plaintiff that he was out of status based on his SEVIS record, and similar conclusions drawn by universities nationwide in similar cases. See also *Liu*, 2025 WL 1233892, at *7-8 (rejecting the same argument). Plaintiff's claim, challenging the substantive determination of Defendants, is outside the scope of the Privacy Act.

**Final Agency Action**

As stated above, only "final agency actions are reviewable under the APA." 5 U.S.C. § 704. In order for an agency action to be considered "final" and subject to review under the APA, two conditions must be satisfied: "First, the action must mark the 'consummation' of the agency's decisionmaking process—it must not be of a merely

tentative or interlocutory nature. And second, the action must be one by which rights or obligations have been determined, or from which legal consequences will flow." *Bennett v. Spear*, 520 U.S. 154, 177-78 (1997) (cleaned up).

In its prior Order, the court relied upon the Third Circuit case of *Jie Fang v. Dir. United States Immigr. & Customs Enf't*, 935 F.3d 172, 182 (3d Cir. 2019), for the proposition that, in that court's words, "[t]he order terminating these students' F-1 visas marked the consummation of the agency's decisionmaking process, and is therefore a final order." Defendants argue that this court's reliance on *Jie Fang* was misplaced because that decision is out of step with controlling precedent in the Seventh Circuit.

Specifically, Defendants direct the court's attention to *Dhakal v. Sessions*, 895 F.3d 532, 539 (7th Cir. 2018), a case in which the plaintiff challenged the denial of his asylum application via the APA. The Seventh Circuit concluded that the decision of the Director of the Chicago Asylum Office did not mark the consummation of the agency's decisionmaking process. *Id.* at 539. The court reasoned that "the statutory scheme for adjudication of asylum claims by the agency must be allowed to take its course." *Id.* at 534. Observing that a more complete factual record could be developed before an immigration court in the event that removal proceedings were initiated (and asylum asserted as a defense), the Seventh Circuit found that "the Director's decision is, in that respect, 'more like a tentative recommendation than a final and binding determination,' or 'the ruling of a subordinate official' when viewed in light of the intended, complete administrative process." *Id.* at 540 (quoting *Franklin v. Massachusetts*, 505 U.S. 788, 798 (1992)).

18

Defendants also rely on *McBrearty v. Perryman*, 212 F.3d 985, 986 (7th Cir. 2000), in which the plaintiff challenged the decision of the District Director of Immigration and Naturalization Service ("INS") declining to adjust their status to that of lawful permanent residents of the United States. The Seventh Circuit concluded that the suit—which did not invoke the APA—was premature in that plaintiffs had failed to exhaust their administrative remedies. *Id*. at 987. Specifically, the court pointed out that the plaintiffs "could obtain review of the district director's decision by the Board of Immigration Appeals if and when the immigration service institutes removal (i.e., deportation) proceedings against them." *Id*.

Defendants argue that there has been "no 'consummation' of anything" because Plaintiff retains the ability to seek reinstatement through further administrative processes.  To wit, it argues: "[E]ven if Plaintiff's nonimmigrant status (rather than only his SEVIS record) was at issue in this case, he could administratively challenge the relevant agency decisions. See 8 C.F.R. § 214.2(f)(16)." That regulation, as described earlier, allows that, under select circumstances, "USCIS may consider reinstating a student who makes a request for reinstatement on Form I–539, Application to Extend/Change Nonimmigrant Status, accompanied by a properly completed Form I–20 or successor form indicating the DSO's recommendation for reinstatement." 8 C.F.R. § 214.2(f)(16)(i).

Initially, Defendants' argument relies on circular reasoning. On the one hand, they maintain that Plaintiff's dispute solely concerns the SEVIS record itself, which does not necessarily reflect one's F-1 status. Yet, at the same time, they assert that Plaintiff

19

should submit to the appeals process for reinstatement of F-1 status. Defendants have not identified any process for the reinstatement of the SEVIS record, to the extent they believe it is separate and apart from F-1 status.

Furthermore, neither case invoked by Defendants concerns SEVIS records or even F-1 status—as mentioned, *McBrearty* does not even involved the APA—such that neither can be considered directly controlling. As the Third Circuit observed, the USCIS review regulations invoked here by Defendants concern only reinstatement of status, as opposed to actual review of the original termination:

> We similarly hold that reinstatement proceedings are not a prerequisite to finality because reinstatement is not a mechanism by which the students can obtain review of DHS's decision to terminate their status for their alleged fraudulent enrollment. Despite the Government's argument to the contrary, there is nothing in the reinstatement provisions that permit the USCIS to review a prior termination order issued by DHS. . . . Even if the students are successfully reinstated by USCIS, they will have achieved that status without ever having undergone review of the initial termination and fraudulent enrollment decision.

*Jie Fang*, 935 F.3d at 183. That distinction is especially relevant here, given that a gap in Plaintiff's SEVIS record exists even after the reinstatement. Defendants have identified no mechanism by which Plaintiff may erase that gap or be relieved from the legal consequences it may cause.

Finally, the basis for a lack of finality asserted here by Defendants is altogether different from that raised by the court in *Dhakal*. Here, Defendants contend that an administrative appeal to USCIS is available to Plaintiff. But the *Dhakal* court reasoned that the plaintiff in that case could be heard by an immigration judge "[o]nce the Department seeks removal and asylum is asserted as a defense." *Dhakal*, 895 F.3d at 539.[8]

The Supreme Court has "recognized that the judicial doctrine of exhaustion of administrative remedies is conceptually distinct from the doctrine of finality[.]" *Darby v. Cisneros*, 509 U.S. 137, 144 (1993). "[T]he finality requirement is concerned with whether the initial decisionmaker has arrived at a definitive position on the issue that inflicts an actual, concrete injury; the exhaustion requirement generally refers to administrative and judicial procedures by which an injured party may seek review of an adverse decision and obtain a remedy if the decision is found to be unlawful or otherwise inappropriate." *Williamson County Regional Planning Comm'n v. Hamilton Bank of Johnson City*, 473 U.S. 172, 193 (1985).

Defendants' argument seems more an attack on exhaustion than on finality. "An agency action is not final if it is only the ruling of a subordinate official, or tentative. The core question is whether the agency has completed its decisionmaking process, and whether the result of that process is one that will directly affect the parties." *Franklin*,

---

[8] To be sure, the Third Circuit would disagree with this position. "[A]n order's finality cannot depend on the institution of removal procedures which may never occur. *Jie Fang*, 935 F.3d at 182.

505 U.S. at 797 (cleaned up). Nothing in the nature of the sudden termination of

Plaintiff's SEVIS record suggests it was a preliminary, tentative, or temporary decision.

See also *Chen v. Noem*, 2025 WL 1163653, at *8 (S.D. Ind. Apr. 21, 2025) (finding

termination of SEVIS record to be final agency action).

 To the extent that Defendants raise any argument concerning the second element

of final agency action—that it creates legal consequences—it is merely a reiteration of its

argument that the SEVIS record does not actually impact F-1 status. The court has

already rejected that argument. Accordingly, the court finds that Plaintiff is reasonably

likely to show that the termination of his SEVIS record is a final agency action.

### Arbitrary and Capricious

 Defendants next argue, briefly, that the termination of Plaintiff's SEVIS record

was not arbitrary and capricious. They argue, in full:

> Here, the only action at issue is DHS's change to Plaintiff's SEVIS records. This
> action was not arbitrary and capricious. SEVIS records may be set to terminated
> for numerous reasons by DHS and by a university. DHS received information of
> criminal history related to Plaintiff and set Plaintiff's SEVIS records to terminated
> as a result. Nevertheless, the SEVIS record has now been reinstated.

 Defendants' argument actually serves to *highlight* the arbitrary and capricious

nature of their conduct. DHS received information of criminal history "related to

plaintiff," and as a result his SEVIS record was terminated. But an important middle

step is clearly missing from this "explanation." Regulations plainly define the type of

"criminal activity" than can be the basis for status termination—a crime of violence for

which a sentence of more than one year imprisonment may be imposed. It is

undisputed in this case that Plaintiff did not have such a conviction. So why was his

SEVIS record terminated? While it is true that "SEVIS records may be set to terminated for numerous reasons by DHS and by a university," surely Defendants are not suggesting this means they can be terminated for *any* reason. In short, Plaintiff is reasonable likely to show that Defendants acted arbitrarily and capriciously.

**Enjoinder of Removal Action**

Defendants next argue that "[t]o the extent Plaintiff seeks an injunction barring the government from initiating removal proceedings, the Court lacks jurisdiction or authority to entertain such a claim" because the INA "expressly forecloses judicial review of a decision to execute an order of removal. 8 U.S.C. § 1252(g)." While this argument appears to concern the scope of potential injunctive relief, rather than the merits of an APA claim, the court will discuss it here.

In *Reno v. American-Arab Anti-Discrimination Committee*, 525 U.S. 471, 486 (1999) ("*AADC*"), the Supreme Court instructed courts to read § 1252(g) narrowly. Heeding that instruction, the Seventh Circuit in *Fornalik v. Perryman*, 223 F.3d 523, 531 (7th Cir. 2000), stated that "almost every alien who brings a claim to federal court . . . does so because she is threatened with removal from the United States . . . . As the INS would have it here, the alien not only would be barred from raising virtually all claims *prior* to removal proceedings (because of exhaustion requirements), but then § 1252(g) would preclude jurisdiction of all claims brought *after* removal is threatened. Such a sweeping reading would be inconsistent with the narrow interpretation of § 1252(g) that *AADC* commands." (Emphases in original).

The plaintiff in *Fornalik* challenged the Attorney General's denial of his application for adjustment of status, but by the time the plaintiff filed a habeas petition, the government had threatened to commence removal proceedings, so the plaintiff requested a stay of his removal. *Id*. at 532. The Seventh Circuit "reject[ed] the [government's] argument that the district court properly invoked § 1252(g) to reject [the plaintiff's] claim" because "[h]is claim is not that the Attorney General is unfairly executing a removal order, but rather that a prior, unrelated error makes his removal improper. This makes our case entirely different from other decisions of this circuit that have applied *AADC*." *Id*. at 553.

In *Chen*, the District Court for the Southern District of Indiana found *Fornalik* controlling. It opined: "Here, Chen does not challenge a decision to commence removal proceedings and instead challenges Defendants' termination of his SEVIS record and F-1 status. Chen's request that the Court enjoin removal proceedings, as in *Fornalik*, 'comes into the case only incidentally.'" *Chen*, 2025 WL 1163653, at *9 (quoting *Fornalik*, 223 F.3d at 532). This court adopts that same reasoning.

Accordingly, the court finds that Plaintiff has demonstrated a reasonable likelihood that he will prevail on his APA claims. Once again, the court need not consider the merits of his other claims at this time.

24

<u>Inadequate Remedy at Law and Irreparable Harm</u>

In its prior Order, the court found as follows:

The harm that Plaintiff would suffer in the absence of a TRO is obvious, and it would be irreparable. Losing F-1 status places Plaintiff's education, research, financial stability, and career trajectory at imminent risk of irreparable harm. Worse yet, in the absence of a TRO, Plaintiff is facing a constant and pervasive threat of immediate detention or removal from the United States. These current and threatened consequences constitute a risk of irreparable harm for which an award of monetary damages would not be sufficient. Accordingly, the court finds these factors satisfied.

Defendants argue that this conclusion was incorrect. They argue that Plaintiff has not been detained and is not facing deportation proceedings. They maintain that the mere possibility of deportation is not a concrete harm. They also argue that the employment or educational ramifications with which Plaintiff is concerned are insufficient.

First, Plaintiff is plainly unable to recover money damages, as the APA does not waive the government's sovereign immunity with regard to a claim seeking money damages. See 5 U.S.C. § 702. Thus, his economic losses, which Defendants do not dispute he may suffer, "can be considered irreparable harm because he has no adequate remedy at law to recover for his damages." *Liu*, 2025 WL 1233892, at *11. Likewise, the interruption to Plaintiff's education and employment cannot be redressed and constitutes irreparable harm. See *id*.

Next, with respect to removal, Defendants cite to *Nken v. Holder*, 556 U.S. 418, 435 (2009), for the proposition that "the burden of removal alone cannot constitute the requisite irreparable injury." But Plaintiff does not rely on the burden of removal *alone*.

25

Whatever that burden may be, it is accompanied in this case by a number of collateral but irreparable consequences. Removal would also threaten Plaintiff's educational and career trajectories. It would prevent Plaintiff from completing his degree for which he has already invested substantial time and money. As the *Liu* court observed, in finding the plaintiff there had demonstrated a risk of irreparable harm:

> If Liu were indeed removed, that "would effectively eliminat[e] his ability to complete his degree program, causing him economic and reputational loss wherever he ultimately resides." Even if Liu were somehow able to repatriate, there is no guarantee that he could return to his program at Dartmouth—he may need to re-apply for admission, repeat courses, and restart research. The permanent disruption to Liu's education would render the past two years he has spent at Dartmouth significantly less valuable because they would not be attached to a degree. Further, were he to enroll at some other program, he may not be able to return to some of the research he started at Dartmouth and would need to start anew.

*Liu*, 2025 WL 1233892, at *11 (quoting *Doe v. Noem*, 2025 WL 1141279, at *8 (W.D. Wash. Apr. 17, 2025)).

Finally, the court finds that the reinstatement of Plaintiff's SEVIS record does not significantly change the analysis. For one, as addressed above in discussing mootness, Defendants' arguments in this case provide little assurance that Plaintiff's SEVIS record will not be terminated again at a moment's notice. Moreover, Plaintiff has shown that the current gap in his SEVIS record may itself lead to legal consequences, such as denials of future immigration-related applications or denial of entry into the country, valid F-1 status notwithstanding. See *Parra Rodriguez v. Noem*, 2025 WL 1284722, at *10 (D. Conn. May 1, 2025) (noting that the plaintiff's "SEVIS record is still tarnished by a 17-day gap in her lawful status," and describing some consequences of that gap); see

26

also 8 C.F.R. § 214.2 ("An F–1 student who is unable to meet the program completion
date on the Form I–20 or successor form may be granted an extension by the DSO if the
DSO certifies that the student has *continually maintained status* and that the delays are
caused by compelling academic or medical reasons, such as changes of major or
research topics, unexpected research problems, or documented illnesses.") (emphasis
added)).

Accordingly, the court finds that Plaintiff has sufficiently demonstrated, absent
injunctive relief, he will suffer irreparable harm for which there is no adequate remedy
at law.

Balancing Analysis

Plaintiff having satisfied the initial elements for a preliminary injunction, the
court must now "weigh the harm the denial of the preliminary injunction would cause
the plaintiff against the harm to the defendant if the court were to grant it." *Mays*, 974
F.3d at 818. The balance of equities includes consideration of whether injunctive relieve
is in the public interest. *Abbott Lab'ys*, 971 F.2d at 12.

Defendants argue that the public interest militates against injunctive relief in this
case. They assert that "it is ICE's database that Plaintiff wishes for this Court to
superintend," and argue that such a position creates "separation-of-powers concern[s]
that Plaintiff is oblivious to." Defendants maintain that control over immigration is a
sovereign prerogative "reserved for political branches and not the courts," and that
"this is also why the public interest in enforcement of immigration laws is significant."

Defendants' argument is rejected. While they assert that the public interest in enforcement of immigration laws is significant, they fail to show that DHS has complied with any immigration law or regulation in this case or that Plaintiff's status was revoked due to his failure to comply with any immigration law or regulation. While they reference "false claims that Defendants are engaging in 'unlawful' conduct," they have made absolutely no effort to argue that what they did was lawful. "There is generally no public interest in the perpetuation of unlawful agency action." *League of Women Voters of United States v. Newby*, 838 F.3d 1, 12 (D.C. Cir. 2016); *Parra Rodriguez*, 2025 WL 1284722, at *10 ("[T]here is substantial public interest in ensuring government agencies abide by federal laws and regulations.").

Finally, Defendants' argument that immigration issues are matters of "sovereign prerogative" in which courts cannot or should not play a role is undermined by centuries of case law, a very small sampling of which has been cited in this Order. The argument is also undermined by the very case Defendants rely on in support of that position, *El Rescate Legal Services., Inc. v. Executive Office of Immigration Review.*, 959 F.2d 742, 750 (9th Cir. 1991). That court did indeed state that "[c]ontrol over immigration is a sovereign prerogative." *Id*. But in the very next sentence it wrote: "Once we determine that the Attorney General's construction of the statute is not arbitrary, capricious, or manifestly contrary to the statute, we cannot impose procedures that merely displace policy choices made by the sovereign." *Id*.; see also *D.B. v. Trump*, 2025 WL 1203232, at *3 (S.D. Ohio Apr. 23, 2025) ("On Defendants' side of the scale, there is literally nothing. The public has no interest in permitting federal officials to act outside the law. So the

28

argument that a TRO would impede the Government's sovereign prerogative (made and rejected elsewhere) falls flat here, too."); *Arizona Student Doe #1 v. Trump*, 2025 WL 1192826, at *8 (D. Ariz. Apr. 24, 2025) (rejecting "sovereign prerogative" argument); *Doe v. Noem*, 2025 WL 1134977, at *8 (E.D. Cal. Apr. 17, 2025) (same).

Defendants have identified no discrete harm that they might suffer as a result of injunctive relief in this case. On the other hand, the potential harm Plaintiff may suffer is well-established. The court therefore finds that the balance of hardships, including the public interest, favors the granting of a preliminary injunction in this case. Accordingly, Plaintiff's Motion for a Preliminary Injunction (#2) is GRANTED.

IT IS THEREFORE ORDERED THAT:

(1) Plaintiff's Motion for a Preliminary Injunction (#2) is GRANTED. Defendants Kristi Noem and Todd Lyons are hereby enjoined as follows:

(a) Defendants shall set aside their termination decision so there are no gaps in Plaintiff's SEVIS record

(b) Defendants shall not terminate Plaintiff's student status under SEVIS absent (i) a valid ground as set forth in 8 C.F.R. § 214.1(d), and (ii) an adequate individualized pre-deprivation proceeding before an impartial adjudicator.

(c) Defendants shall not take any adverse immigration action against Plaintiff as retaliation for the present litigation, such as issuing a Notice to Appear in Removal Proceedings, detaining Plaintiff pursuant to his immigration status, or otherwise transferring of Plaintiff out of this court's jurisdiction.

(2) This Preliminary Injunction shall remain in place until a final order is entered in this case.

(3) This matter is referred to the magistrate judge for further proceedings.

ENTERED this <u>7th</u> day of <u>  May  </u>, 2025.

<u>s/Colin Stirling Bruce</u>
COLIN S. BRUCE
U.S. DISTRICT JUDGE